***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission hereby affirms with modifications the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment on August 25, 2006.
5. At all relevant times, an employment relationship existed between Plaintiff-Employee and Defendant-Employer.
6. At all relevant times, Defendant-Employer was self-insured and Sedgwick CMS was its Third Party Administrator.
7. At the time of the alleged injury, Plaintiff had an average weekly wage of $991.31, which yields a weekly compensation rate of $660.91.
8. The parties entered into a Pre-Trial Agreement, which was submitted into evidence as part of the record, along with the following stipulated exhibits:
 a. Stipulated Exhibit No. 1 consists of Industrial Commission Forms;
 b. Stipulated Exhibit No. 2 consists of Plaintiff's relevant medical records;
 c. Stipulated Exhibit No. 3 consists of Plaintiff's responses to Defendants' discovery;
 d. Stipulated Exhibit No. 4 consists of Plaintiff's personnel file;
 e. Stipulated Exhibit No. 5 consists of Plaintiff's payroll records; and
 f. Stipulated Exhibit No. 6 consists of Defendant-Carrier's payout history. *Page 3 
 *********** ISSUES
The primary issue for consideration is whether Plaintiff is entitled to additional wage loss compensation after approximately September 30, 2007 when his employment with Defendant-Employer ended due to plant closure.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On August 25, 2006, Plaintiff worked as a truck driver for Defendant-Employer and sustained injuries to the left shoulder, neck, lower back, hip, and leg when he tripped over boxes in the doorway of a trailer, swung around, and hit the side of the trailer. This same mechanism of injury occurred again the following day.
2. The claim was admitted on a Form 60 with temporary total disability benefits beginning on September 20, 2006 based on an average weekly wage of $991.31 and a weekly compensation rate of $660.91. Plaintiff returned to work for Defendant-Employer on March 18, 2007 on restricted duty and was paid temporary partial disability benefits in various amounts, as documented on Defendants' Form 62. The various amounts of temporary partial disability benefits paid to Plaintiff are reflected in Defendant-Carrier's payout records and are supported by Plaintiff's payroll records.
3. Plaintiff initially treated with his family physician, Dr. Jeffrey Derick, and received conservative care for his neck, shoulder, and back. Plaintiff later treated with a specialist in general surgery, Dr. Leonard Baugham. Thereafter, Plaintiff sought treatment from *Page 4 
a specialist in cervical treatment, Dr. Alfred E. Geissele, and a specialist in pain treatment, Dr. Hans Hansen.
4. Plaintiff's physicians recommended conservative care including physical therapy and epidural steroid injections. He was ultimately allowed to return to light duty work in March 2007. Defendant-Employer allowed Plaintiff to work a secretarial type job before doing yard work, which required him to move trailers from one area to another.
5. In the summer of 2007, Plaintiff was moved to the position of security guard for full time employment of eight hours per day. This position gave Plaintiff the option of moving around as needed.
6. In September 2007, Defendant-Employer closed its operations in Wilkes County. By this time, Plaintiff's physicians had already released him from their care to return to work and he was no longer seeking any medical treatment. Plaintiff's last appointment for his shoulder and neck condition was with Dr. Geissele on August 9, 2007.
7. Since that time, Dr. Derick testified he had no opinion about Plaintiff's neck or shoulder condition or any work restrictions after Plaintiff started going to the other medical specialists. Likewise, Dr. Baugham opined since he had not treated Plaintiff since November 17, 2006, he was not aware of Plaintiff's current restrictions or work abilities.
8. On August 9, 2007, Dr. Geissle placed Plaintiff at maximum medical improvement (MMI) and assigned a two percent permanent partial disability rating to his back. He had no further treatment recommendations and assigned a temporary lifting restriction of no greater than fifty pounds. Plaintiff's prior job with Defendant-Employer required him to lift boxes weighing approximately twenty to forty pounds for the loading and unloading of products. *Page 5 
Dr. Geissele reiterated, however, that without a current evaluation of Plaintiff, any opinion as to Plaintiff's current condition or work status would be mere speculation.
9. Dr. Hans Hansen opined Plaintiff was capable of driving long periods of time and saw no reason why he couldn't work without restrictions. Plaintiff's physicians had already allowed him to return to work in a light duty capacity and the lifting restriction was only meant to be temporary. None of his physicians expressly prohibited him from work as a truck driver. In addition, Plaintiff was successfully working as a security guard until the plant closed.
10. Plaintiff managed his condition on his own with over-the-counter medications and occasional use of the TENS unit. Since the plant closed in September 2007, Plaintiff claimed he made efforts to find employment, but has been unsuccessful due to his physical limitations. However, Plaintiff also testified where he tried to apply for work, the prospective employers probably did not have a driving or guard position open.
11. Plaintiff later admitted his wife and daughter actually called the several prospective employers with whom he claimed to have applied, rather than making those calls himself. Furthermore, Warner Transportation, Hardy Brothers, and Arrow Trucking did not reject him due to his physical limitations, but rather because they were not hiring. Plaintiff's wife reiterated that the prospective employers were simply not hiring at the time.
12. Plaintiff has received $372.00 per week in unemployment benefits from November 11, 2007 to February 19, 2008. Plaintiff understood that to apply for these benefits he must hold himself out as being physically able to work.
13. None of Plaintiff's doctors have said that Plaintiff could not work because of his physical conditions related to his work injury. The Full Commission finds and concludes that Plaintiff's inability to find a job is not due to any preexisting condition, his current physical *Page 6 
condition, or his prior workers' compensation injury, but instead, due to economic circumstances in the local job market.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident on August 25, 2006. N.C. Gen. Stat. § 97-2(6). An injured employee seeking compensation under the North Carolina Workers' Compensation Act bears the burden of proving the existence of his or her disability, including the loss of wage earning capacity.Clark v. Walmart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005).
2. In order to support a conclusion of disability, temporary or permanent, the Industrial Commission must find that the employee has shown that he was incapable after his injury of earning the same wages that he had earned before his injury either in the same employment or with any other employer, and that his incapacity to earn the same wages was caused by his injury. Clark,360 N.C. at 43, 619 S.E.2d at 492.
3. The claimant may meet his burden of proof of establishing continued disability under Clark through (a) medical evidence demonstrating that he is physically or mentally incapable of work in any employment as a result of his work-related injury, (b) evidence that he is capable of some work but that he has been unsuccessful in obtaining employment after a reasonable effort, (c) evidence that it would be futile for Plaintiff to seek other employment due to pre-existing conditions, or (d) evidence that he has obtained alternate employment at a wage less than that earned before the injury. Id.; Russell v. Lowe's Product Distrib.,108 N.C. App. 762, 765 425 S.E. 2d 454, 457 (1993). *Page 7 
Plaintiff failed to produce sufficient evidence of any of these methods to determine disability to prove he was incapable of earning the same wages he earned preinjury, either with Defendant-Employer or any other employer, as a result of his work-related injury. Id.
4. In the present case, Plaintiff did not meet his burden of proof that after Defendant-Employer's closure in September 2007, he was disabled due to his work-related injury. Plaintiff did not show that he was physically or mentally unable to work, that he was capable of some work, but after a reasonable effort was not able to obtain suitable employment, that it was futile for him to seek employment because of other factors, or that he obtained other employment at wages less than his pre-injury wage. Id.
Plaintiff was capable of some work and none of Plaintiff's doctors said Plaintiff could not return to work. Id. Therefore, Plaintiff failed to prove that he is disabled from employment due to any preexisting condition, his current physical condition, or his prior workers' compensation injury, but instead, due to economic circumstances in the local job market. As such, Plaintiff is not entitled to temporary total disability benefits. Id.
5. As a result of Plaintiff's compensable August 2006 injury by accident Plaintiff sustained a permanent partial impairment of two percent to his back. As a result of his permanent back injury and rating, Plaintiff is entitled to compensation for permanent partial disability in the amount of $660.91 for six weeks totaling $3,965.46.
6. Plaintiff is entitled to all reasonable medical treatment necessary to provide a cure, give relief, or to lessen Plaintiff's disability, for so long as said treatment is necessary as a result of Plaintiff's injury by accident of August 25, 2006. N.C. Gen. Stat. § 97-25.1.
 *********** *Page 8 
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for continuing temporary total disability benefits is DENIED.
2. Defendants shall pay to Plaintiff in a lump sum permanent partial disability benefits for a two percent permanent partial disability rating to his back in the amount of $3,965.46. Defendants shall deduct 25% of said payment and send it directly to Plaintiff's attorney as an approved attorney fee for his representation of Plaintiff in this claim.
3. Defendants shall continue to provide all reasonable medical treatment necessary to provide a cure, give relief, or tends to lessen Plaintiff's disability, for so long as said treatment is necessary as a result of Plaintiff's injury by accident of August 25, 2006.
4. Defendants shall pay the costs, which include an expert witness foe of $525.00 to Dr. Jeffrey M. Derick and $425.00 to Dr. Hans Hansen, if not already paid by prior order.
This the 12th day of August 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION
 S/___________________ DANNY L. McDONALD COMMISSIONER